## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LATRIA HARRISON,

      Plaintiff,

v.

DEPARTMENT OF VETERAN AFFAIRS
and DENIS R. MCDONOUGH,

      Defendants.

_____/

Case No. 2:23-cv-12290
Hon. Brandy R. McMillion
United States District Judge

## <u>OPINION AND ORDER GRANTING DEFENDANTS'</u>
## <u>MOTION FOR SUMMARY JUDGMENT (ECF NO. 18)</u>

Plaintiff Latria Harrison ("Harrison") brought this action against her employer, Defendants Department of Veteran Affairs (the "Department" or the "VA") and Denis R. McDonough (together, "Defendants"),[1] alleging failure to accommodate, harassment, and retaliation under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Defendants now move for summary judgment under Federal Rule of Civil Procedure 56. ECF No. 18. The Motion has been adequately briefed so the Court will rule without a hearing. *See* E.D. Mich. LR 7.1(f)(2). The Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 18).

---

[1] McDonough was the VA Secretary under President Joseph R. Biden, Jr. Doug Collins is the current VA Secretary under President Donald J. Trump.

# I.

This case concerns alleged adverse employment actions taken against Harrison by her employer and based on her disability. Harrison began working for the VA as a certified nurse assistant in 2014. ECF No. 18-2, PageID.142. In 2016, she transferred to the John D. Dingell VA Hospital ("Dingell VA") in Detroit and began working as a medical support assistant. *Id.* at PageID.144. Sometime later that year, she was promoted to an advanced medical support assistant position. *Id.* Harrison worked at the reception desk in the mental health department of Dingell VA. *Id.* at PageID.146, 155. Patient volume at the hospital varies by the floor and the area. *Id.* at PageID.146. The front of the 7th floor is one of the busiest areas in the hospital, but Harrison worked in the back area on that floor. *Id.* at 146, 156.

Harrison has anxiety, depression, and bipolar disorder. ECF No. 18-2, PageID.141. To manage her anxiety and help her "focus and concentrate," Harrison, in March 2020, submitted an accommodation request to permanently work in the "B2 South Area," an area that, compared to others, was a low-volume work environment. ECF No. 18-6, PageID.180; ECF No. 18-2, PageID.150. On March 12, 2020, Harrison's then-supervisor, Linda Meyers ("Meyers"), approved part of Harrison's accommodation request and denied another. *Id.* Meyers denied Harrison's request for a permanent assignment in the B2 area and maintained Harrison's station in the back of the 7th floor. *Id.* But Meyers approved Harrison

for a shift in the B2 South Area in "one-month intervals lasting no less than 15 days." *Id.*[2]  Additionally, the accommodation granted Harrison two 15-minute breaks and one 30-minute break, that Harrison could request as needed.  *Id.*

"In the middle of 2020," Brian Humphries ("Humphries") became Harrison's supervisor.  ECF No. 18-2, PageID.149; ECF No. 18-7, PageID.184.  Fast forward a year-and-a-half.  Harrison alleges that on January 5, 2022, Humphries instructed Harrison to work in the front of the 7th floor.  ECF No. 18-2, PageID.152; *see* ECF No. 1, PageID.4.  According to Harrison, she tried to give Humphries documentation of her accommodation relating to her work location, but Humphries "refused" to take it without explanation.  ECF No. 18-2, PageID.152.[3]  In response, Harrison reported the issue to Human Resources ("HR") Representative Tykeisha Phelan ("Phelan") and requested that Humphries enforce the accommodation.  *Id.* at PageID.152-153.   Following   the   HR   meeting,   Humphries   honored   the accommodation.  *Id.*  Yet despite Humphries's initial instruction to work in the front area of the 7th floor, Harrison never actually worked there.  *Id.* at PageID.151-152.

---

[2] The record is somewhat unclear on where Harrison actually works.  Harrison's accommodation provides that she would continue working on the 7th floor with a shift in the B2 South area.  *See* ECF No. 18-6.  But, during her deposition, she confirmed she "only work[ed] on B2 South . . . ." ECF No. 18-2, PageID.153.

[3] For his part, Humphries testified that when he became Harrison's supervisor, he was unaware of her accommodation.  ECF No. 18-7, PageID.186.

She was also never asked to change her permanent workstation to the front of the 7th floor. *Id.*

Before Humphries was her supervisor, Meyers supervised Harrison "for a short time" pre-pandemic. ECF No. 18-2, PageID.148. Harrison testified that Meyers was harassing and discriminating against her because she "had FMLA." *Id.* at PageID.148. At some point (Harrison could not remember when), Harrison filed a complaint with the Equal Employment Opportunity Commission against Meyers for discriminating and retaliating against her after Harrison used her "entitled family medical leave." *Id.* Harrison also testified, however, that Meyers never denied her FMLA leave. *Id.* at PageID.149. And while Harrison testified that Meyers "sent [her] an email about using it," Harrison couldn't remember what the email said. *Id.* Harrison eventually dropped the complaint, though she testified she did so because Meyers "asked her to" so they could have a "new beginning[]" and "let bygones be bygones." *Id.*

In February 2022, Harrison filed an Equal Employment Opportunity Complaint detailing her issues with Meyers. *See* ECF No. 21-4, PageID.311-312.[4] The complaint was accepted by a letter dated in mid-April 2022, which noted that she raised one claim asking whether she was discriminated against based on

---

[4] It is unclear from the record if this is the same complaint Harrison filed but then dropped, or if this EEOC complaint presented new issues separate from her previous one.

"Disability and Reprisal since January 5, 2022," based on the denial of a reasonable accommodation. *See id.* at PageID.316. Then, in mid-May 2022, Harrison submitted a request to amend her complaint to add several claims: (1) a threat to issue her a "Performance Improvement Plan" after she used FMLA leave; (2) being forced to attend a beginner medical support assistant course; (3) threatening comments about her midyear performance evaluation; (4) her "office was sent a negative email directed at [her]"; and (5) she was "harassed for taking an allotted break." *Id.* at PageID.313-315. In a letter dated in late May 2022, the VA Office of Resolution Management, Diversity, and Inclusion issued a letter amending Harrison's complaint to include those claims. *See id.*

In early September 2023, Harrison sued Defendants. ECF No. 1. She raises three claims: (1) disparate treatment and failure to accommodate under the Rehabilitation Act; (2) harassment and retaliation for engaging in protected activity under the Rehabilitation Act; and (3) retaliation in violation of the FMLA. *See id.* at PageID.5-13. Over a year later, in late November 2024, Defendants moved for summary judgment. ECF No. 18. That Motion is fully briefed. ECF Nos. 21, 24. Having reviewed the parties' briefs, the Court finds oral argument unnecessary and will decide the Motion based on the record before it. *See* E.D. Mich. LR 7.1(f).

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Yet, despite this entitlement

> to all reasonable inferences when evaluating a summary judgment motion, when a plaintiff's claims are only supported by his "own contradictory and incomplete testimony . . . no reasonable person would undertake the suspension of disbelief necessary to credit the allegations made in his complaint."

*Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 449 (6th Cir. 2017) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005)). Courts have thus "repeatedly held that a plaintiff's internally contradictory deposition testimony cannot, by itself, create a genuine dispute of material fact." *Bush*, 683 F. App'x at 449 (collecting cases). And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Scott*, 550 U.S. at 380; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott*, 550 U.S. at 380 (quoting *Matsushita*, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 247-248).

The court does not weigh the evidence to determine the truth of the matter but must decide if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). But in evaluating whether there are genuine and material triable issues, district courts are "not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)).

### III.

Defendants raise three arguments that they say warrant summary judgment in their favor. They contend that Harrison (1) can't establish her claims for failure to accommodate relating to her work location and request to work remotely; (2) can't

7

establish her hostile work environment claim because there's no indication that she was harassed because of her disability; and (3) is covered by Title II of the FMLA, which doesn't provide a private cause of action for Title II employees, so her retaliation claim must be dismissed. The Court addresses each in turn.

## A.    Failure to Accommodate

### 1.    Work Location

Defendants first argue that Harrison can't establish her *prima facie* case of failure to accommodate as to her work location. This relates to her claim that Humphries told her that, despite her accommodation to work in the less-busy area at the back of the 7th floor, she instead had to work in the far-busier front of that same floor. The Court agrees that summary judgment of this claim is proper.

To start, Rehabilitation Act claims are reviewed the same as those under the Americans with Disabilities Act ("ADA"). *Saroki-Keller v. Univ. of Mich.*, 568 F. Supp. 3d 860, 865 (E.D. Mich. 2021) (citing *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)).[5] The Court therefore "use[s] case law citing both statutes interchangeably in its analysis." *Id.*

It is unlawful discrimination to fail to provide a reasonable accommodation to a disabled yet otherwise qualified person under the Rehabilitation Act and the ADA.

---

[5] As a federal employee, Harrison's exclusive remedy for her disability-based claims is under the Rehabilitation Act, not the ADA. *See Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023) (citation omitted).

*See Saroki-Keller*, 568 F. Supp. 3d at 865 (citing *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018)). How a plaintiff establishes their *prima facie* case for failure to accommodate depends on the type of evidence they present: "direct" or "indirect" evidence of discrimination. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416-17 (6th Cir. 2020). Both parties argue under the indirect-evidence test. *See* ECF No. 18, PageID.121; ECF No. 21, PageID.263-264. When a plaintiff goes the indirect-evidence route, the *McDonnell-Douglas*[6] burden-shifting framework applies. *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004).

To establish a failure to accommodate under the Rehabilitation Act with indirect evidence of discrimination, Harrison must show that she is: (1) disabled, (2) qualified for her position, (3) her employer was aware of her disability, (4) an accommodation was needed, and (5) her employer failed to provide the necessary accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004) (*overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009), *as stated in Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009)) (citation omitted). If the plaintiff establishes their *prima facie* case, it becomes the employer's burden to show that the employee can't "reasonably be accommodated[] because the accommodation would impose an undue hardship on the operations of its programs." *DiCarlo*, 358 F.3d at 419 (citation omitted).

---

[6] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Defendants focus on the last element of Harrison's *prima facie* case: whether they failed to provide her accommodation. *See* ECF No. 18, PageID.121-122. And the question for that element is: Did the Department fail to provide Harrison her accommodation when Humphries instructed her to work at the front of the 7th floor but that instruction was reversed within a week? No.

Prompt rescission or correction of what would otherwise be an adverse employment action before it causes any tangible harm nullifies a failure-to-accommodate claim. *See Keeton v. Flying J, Inc.*, 429 F.3d 259, 263 (6th Cir. 2005) ("[W]hen an employer imposes an employment action that would be an adverse employment action but then quickly reverses the action, the employee has not suffered an adverse employment action.") (citing *Birch v. Cuyahoga Cnty. Probate Ct.*, 392 F.3d 151 (6th Cir. 2004), and *Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000)); *see also Birch*, 392 F.3d at 155-57, 169 (affirming summary judgment of retaliation claim and reasoning that after the employer rescinded alleged termination, there was no actual change in the plaintiff's status or conditions of employment); *Kubik v. Cent. Michigan Univ. Bd. of Trs.*, 717 F. App'x 577, 579 (6th Cir. 2017) (affirming denial of tenure-extension request under pregnancy discrimination claim and explaining that "[a]n action is unlikely to qualify as materially adverse when it ends up having no effect" which "may happen because of a quick rescission"). And although a failure-to-accommodate claim under the

Rehabilitation Act does not require proof of an adverse employment action, the adverse employment action *is* the failure to accommodate. *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868-69 (6th Cir. 2007)).

The Court finds that the only reasonable conclusion a jury could reach in this case is that Harrison's week-long reassignment to the front of the 7th floor was not an adverse employment action. This claim fails for a couple reasons. First, the request for Harrison to work the front of the 7th floor at most on an occasional basis isn't a tangible change in the terms or conditions of her employment. Working the front desk sporadically—if at all—is more appropriately characterized as a minor inconvenience rather than an adverse condition of employment. *See Kubik*, 717 F. App'x at 583 ("To be materially adverse, a change in employment conditions must be more than simply inconvenient.").

And second, even if Harrison occasionally worked at the front of the 7th floor (and there's no indication that she did), she was never asked to permanently change her work location there. ECF No. 18-2, PageID.152. Harrison recalls being asked at least once by Humphries to work at the front of the 7th floor. *Id.* But when asked if she "ever actually work[ed] on seven in the front," Harrison replied, "At that time, no." *Id.* Plus, although Humphries asked her to do this, contrary to her accommodation, he testified that when he made the request, he was unaware that she

had the accommodation.  ECF No. 18-7, PageID.186.  And when he was made aware of the accommodation, the instruction to work at the front of the 7th floor was reversed.  ECF No. 18-2, PageID.152-153.  The prompt rescission of the request for Harrison to work at the front of the 7th floor—which occurred within a week of Humphries's initial instruction—therefore precludes a finding that Defendants failed to provide Harrison's accommodation.  *See Keeton*, 429 F.3d at 263; *Kubik*, 717 F. App'x at 583.

Accordingly, the Court finds that Humphries's rescinded request, which was corrected within a week and before implementation, and caused no interruption in Harrison's accommodations, does not constitute a failure to accommodate. Summary judgment of Harrison's failure-to-accommodate claim relating to her workplace location is appropriate.

### 2.    Telework

Defendants also argue they are entitled to summary judgment on Harrison's failure-to-accommodate claim as to her request to work remotely because she didn't exhaust her administrative remedies with respect to this claim.  The Court agrees. As Defendants point out, Harrison failed to address the telework argument in her Response.  *See* ECF No. 24, PageID.367; *see also generally* ECF No. 21.  The Court therefore finds that Harrison has conceded this argument.  "Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail

to respond to the moving party's arguments." *See Adkins v. Marathon Petroleum Co., LP*, 105 F.4th 841, 854 (6th Cir. 2024) (internal citation omitted).

Nevertheless, claims under the Rehabilitation Act require exhaustion of administrative remedies, meaning a plaintiff must first file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before filing a federal lawsuit. *See Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991). Typically, charges of discrimination must be precise enough to identify not only the parties but also the allegedly discriminatory action or practices. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citation omitted). And failure to include a claim in an EEOC charge usually precludes a plaintiff from bringing that claim to federal court. *See* 42 U.S.C. § 2000e-5(f)(1); *Younis*, 610 F.3d at 361.

That said, EEOC charges are often filed by an aggrieved employee, not an attorney. *Younis*, 610 F.3d at 361. So, courts treat those as *pro se* filings, meaning the allegations contained within them are liberally construed. *Id.* at 362 (citation omitted). This, in turn, allows courts to "also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* (citation omitted). And if facts about the charged claim would "prompt the EEOC to investigate a different, uncharged claim," the plaintiff isn't barred from filing suit on that claim. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010).

13

When it comes to her failure-to-accommodate claim as to remote work, Harrison failed to exhaust her administrative remedies.  In late May 2022, Harrison sought to amend her EEOC complaint to add five alleged issues at work that had happened earlier that month.  *See* ECF No. 21-4, PageID.313-315.  The five alleged incidents include: (1) a threat to issue her a "Performance Improvement Plan" after she used FMLA leave; (2) being forced to attend a beginner medical support assistant course; (3) threatening comments about her midyear performance evaluation; (4) her "office was sent a negative email directed at [her]"; and (5) she was "harassed for taking an allotted break."  *Id.*  None of these issues included a denial of a request to work remotely, even though Harrison claims that request was made in April 2022 (a month before she tried to amend her EEOC complaint).  *See* ECF No. 21-4, PageID.313-315.[7]  Nor can any of these alleged incidents be liberally construed to raise a failure-to-accommodate claim as to a denial of a remote-work request.  That is, none of the claims in Harrison's amended EEOC charge would reasonably give rise to an investigation of a denied request to work remotely.  *See Younis*, 610 F.3d

---

[7] The Court notes that Harrison claims she made the request to work remotely on April 1, 2022, citing page 72 of her deposition transcript.  *See* ECF No. 21, PageID.256.  That page of her deposition does indicate she made a request for remote work, but it doesn't support the April 1, 2022 date.  *See* ECF No. 18-2, PageID.156 ("*Q.*  And when did you ask for an accommodation to work to telework?  *A.*  I can't remember.  It was some time ago.").  That said, she received medical documentation supporting her request for remote work, which was signed by a physician's assistant on April 27, 2022.  ECF No. 21-5.  Defendants also provide documentation that Harrison requested a remote-work accommodation in July 2022.  *See* ECF No. 18-14.  But there's no indication that Harrison made an additional request to amend her EEOC complaint to add the remote-work request then either.

14

at 361 (stating that uncharged claims must be "reasonably related to or grow out of the factual allegations in the EEOC charge."). The Court therefore grants summary judgment of Harrison's failure-to-accommodate claim as to remote work.

## B.    Disability Discrimination

Harrison alleges that Phelan asked for money in exchange for processing her telework accommodation request. *See* ECF No. 1, PageID.4; ECF No. 18-2, PageID.157. Defendants argue summary judgment is appropriate here because Harrison can't establish that she was discriminated against because of her disability. The Court agrees with Defendants.

To establish discrimination under the Rehabilitation Act, Harrison must prove a *prima facie* case that she (1) has a disability as defined under the Rehabilitation Act; (2) is otherwise qualified to perform the job requirements; and (3) that the adverse action was taken solely by reason of the disability. *Saroki-Keller v. Univ. of Mich.*, 568 F. Supp. 3d 860, 869 (E.D. Mich. 2021). As with her failure-to-accommodate claim, because Harrison relies on indirect evidence, the *McDonnell Douglas* burden-shifting framework applies. *Bent-Crumbley v. Brennan*, 799 F. App'x 342, 345 (6th Cir. 2020).

Both parties agree that Harrison has a disability and is qualified for her position. The question, then, is whether Phelan's request for Harrison to send her

money to process her accommodation request was taken solely by reason of Harrison's disability.

Even if Phelan's request for money in exchange for an accommodation was an adverse action (it was certainly inappropriate to say the least), Harrison fails to demonstrate that Phelan made the request solely by reason of Harrison's disability. *See Saroki-Keller*, 568 F. Supp. 3d at 869. Nothing Harrison presents suggests that Phelan requested the money solely because of Harrison's disability. Indeed, even in the light most favorable to Harrison, her own text messages with Phelan show that Phelan was in some sort of financial trouble and that Harrison sent her $200 as a loan. *See generally* ECF No. 18-16. True, Harrison testified that the money she gave Phelan "wasn't a loan," *see* ECF No. 18-2, PageID.159, but the texts she sent directly to Phelan—those asking Phelan when she would re-pay the $200 to Harrison—suggest otherwise, *see* ECF No. 18-16. And on a summary-judgment motion, courts may disregard testimony that "is blatantly contradicted by the record, so that no reasonable jury could believe it . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Such is the case here. Faced with a choice between Harrison's deposition testimony and her own (objective) text messages to Phelan, no reasonable jury could believe that the $200 Harrison sent was for anything but a loan to help Phelan with her financial troubles. *See* ECF No. 18-16. The Court thus finds summary judgment is warranted on Harrison's disability-discrimination claim.

**C.     Hostile Work Environment—Harassment and Retaliation**

**1.     Harassment**

Defendants urge the Court to grant them summary judgment on Harrison's harassment claim because she can't establish a hostile work environment.  ECF No. 18, PageID.125-131; ECF No. 24, PageID.370-373.   The Court agrees it is appropriate to grant summary judgment in Defendants' favor.

To establish a hostile work environment claim, Harrison must show five things: "(1) [she] was disabled; (2) [she] was subject to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment unreasonably interfered with [her] work performance; and (5) [the] defendant either knew or should have known about the harassment and failed to take corrective measures." *Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023) (quotation marks and citations omitted; alterations in original).

To start, Harrison has waived any opposition to this argument.   "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention some possible argument in the most skeletal way, leaving the court to put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation modified).

17

In what amounts to approximately three pages, Harrison argues that summary judgment is inappropriate because she was "harassed in violation of the Rehabilitation Act."   ECF No. 21, PageID.265 (capitalization and emphasis omitted).  The first page or so presents a general case law section about hostile work environments.   *Id.* at PageID.265-266.   What remains starts with a short and conclusory paragraph stating: "It is clear in the case at bar that Ms. Harrison was subjected to continual harassment by supervisors/co-workers, and that the employer knew, or should have known of the harassment[.]"   *Id.* at PageID.266.  This is the only analysis presented on this issue.  *See id.* at PageID.266-268.  Following that, Harrison provides 14 instances of apparent harassment against her.  *See id.*  After the 14th, Harrison proceeds to the next argument about retaliation.  *See id.* at PageID.268.

Harrison doesn't provide any authority defining severe or pervasive conduct, let alone a discussion of how the specific conduct here is severe or pervasive.  She instead summarily asserts that it's "clear" her co-workers and supervisors "subjected [her] to continual harassment," and that the Department knew, or should have known, of the harassment; and she then presents to the Court 14 incidents of harassment.  Harrison leaves it to the Court to connect the dots for her.  But that's improper.  *See McPherson*, 125 F.3d at 995-96.  Harrison has therefore waived opposition to Defendants' hostile work environment arguments.  Still, the Court

must ensure Defendants are actually entitled to summary judgment on this issue. And the Court finds that they are.

Harrison can't show that any harassment that occurred was based on her disability or other protected activity. That dooms her hostile work environment claims. *See Bowman v. Shawnee St. Univ*, 220 F.3d 456, 464 (6th Cir. 2000) ("Bowman recites a litany of perceived slights and abuses, [but] many of the alleged harassing acts cannot be considered in the hostile environment analysis because Bowman has not shown that the alleged harassment was based upon his status as a male."). At her deposition, Harrison affirmed that Meyers, Humphries, and Susan Yu (someone who, in 2020, was assistant director of the VA but later became an associate director there in 2023) "harassed or bullied [her] on the basis of [her] disability[.]" ECF No. 21-2, PageID.299; ECF No. 18-10, PageID.204 (Susan Yu deposition). But when asked what actions they took that Harrison considered harassment or bullying based on her disability, Harrison said, "I can't recall." *See id.* Harrison thus provides incomplete, conclusory testimony about whether the harassment she faced was disability-based, and in that case, "no reasonable person would undertake the suspension of disbelief necessary to credit the allegations" of disability discrimination she alleges in her complaint. *See Bush*, 683 F. App'x at 449 (quotation marks and citation omitted). The Court is also under no obligation to scour the record for facts that help Harrison establish a genuine and material

factual dispute. *See Emerson*, 446 F. App'x at 736. Because Harrison hasn't shown that any harassment was *because of* her disability, her hostile work environment claim fails.[8] *See Bryant*, 72 F.4th at 151.

## 2.    Retaliation

Defendants argue summary judgment of Harrison's retaliation claim is also appropriate. Harrison's responsive argument on this issue is much of the same as her harassment argument and, therefore, it fares no better.

To establish a *prima facie* case of retaliation under the Rehabilitation Act, Harrison must show that she (1) engaged in a protected activity, (2) the defending party was aware that she had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action. *Bledsoe v. Tenn. Valley Auth. Bd. of Directors*, 42 F.4th 568, 587-88 (6th Cir. 2022). Again, because

---

[8] In addition, beyond Harrison's failure to establish that any harassment was *because of* her disability, much of what she identifies as discriminatory action against her doesn't rise to the level of harassment to satisfy the second element of a hostile work environment inquiry. In her complaint, Harrison identifies five actions allegedly taken against her that she sees as harassment: (1) "a higher level of scrutiny concerning her work assignments"; (2) "unwarranted discipline"; (3) "forced [attendance of] a beginners Medical Support Assistant course"; (4) "threatening comments regarding her midyear performance evaluation"; and (5) "ridicule[] for taking an allotted break." ECF No. 1, PageID.4-5, 10. The Court agrees with Defendants—and the authority they cite—that none of these actions rise to the level of harassment and, therefore, Harrison can't establish a hostile work environment claim. *See* ECF No. 18, PageID.129-131 (citing cases like *Amini v. Rite Aid Corp.*, 819 F. App'x 344, 348 (6th Cir. 2020); *Mensah v. Mich. Dep't of Corr.*, 621 F. App'x 332, 334, 336 (6th Cir. 2015); *Russell v. Univ. of Toledo*, 537 F.3d 596, 608 (6th Cir. 2008); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 6th Cir. 2007); and *Akers v. Alvey*, 338 F.3d 491, 499 (6th Cir. 2003)).

this is an indirect-evidence case, if a *prima facie* case of retaliation is established, the burden shifts to Defendants under the *McDonnell Douglas* framework.  *Id.*

Like her harassment claim, Harrison has waived this issue.  Though her retaliation argument cites more authority than her harassment argument, she fails to provide substantive analysis that allows the Court to understand the basis for her retaliation argument.  She asserts that, "[a]s delineated above," it was "clear" that she had established a *prima facie* case of retaliation."  ECF No. 21, PageID.268.  But she doesn't explain where "above" that's delineated.  And, assuming she's referring to the 14 incidents in her harassment argument, that doesn't help her because, as already explained, there's no substantive analysis there either.

The Court acknowledges that interwoven between case law are three main assertions.  The first two come at the end of two paragraphs referencing case law and are conclusory.  *See* ECF No. 21, PageID.269-270 (The first: "Clearly, Plaintiff suffered an adverse employment action in the case at bar"; and the second: "It is clearly evident, as outlined above that 'plaintiff was subjected to severe or pervasive retaliatory harassment.'") (emphasis omitted from second quote).  The third identifies what the retaliation was: "Defendant retaliated against Plaintiff for having sought accommodation for her disability, as described above, in violation of [t]he Rehabilitation Act."  *Id.* at PageID.270 (emphasis omitted).  But then Harrison asserts in conclusory fashion that "Defendant's actions were intentional, with

21

reckless indifference to Plaintiff's rights and sensibilities" and that "[t]he employer clearly knew that Ms. Harrison was being harassed, yet they failed to do anything about it . . . ." *Id.*

Harrison's failure to develop her retaliation argument renders it waived. *See McPherson*, 125 F.3d 989, 995-96. True, she identifies why she believes she was retaliated against (for seeking an accommodation). But beyond that, all she does is "mention some possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Id.* That's not sufficient, so the Court deems any opposition to Defendants' argument waived.

Even so, her retaliation claim fails because, just like her harassment claim, all Harrison presents are her subjective beliefs about certain actors' motives. But to avoid summary judgment of a retaliation claim, a plaintiff must present more than conclusory assertions, their subjective beliefs, and their general intuition. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009) (citing *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)). Here, that's all we have.

For example, Harrison believed that Meyers, Humphries, and Yu "harassed or bullied [her] based on [her] prior EEO activity," because "Ashley[9] and Brian both told [Harrison] that Linda Meyers was asking them to lie and coerce them to say that

---

[9] Ashley's last name is not provided in Harrison's deposition, and she is only identified as a "lead." ECF No. 18-2, PageID.162.

they have issues with [Harrison] or to say what it is she wanted them to say."  ECF No. 21-2, PageID.299 (footnote added).  But when asked what Meyers wanted "them to lie about," Harrison said, "I don't know.  You have to ask them."  *Id.*  And when asked again about Meyers's alleged "harassing or bullying," Harrison said she could not remember what those things were.  *Id.* at PageID.300.  She gave similar testimony about Humphries.  *Id.*  And when it came to Yu, Harrison affirmed that Yu edited and rewrote witness statements that said "they saw harassment and they saw retaliation."  *Id.*  But, according to Harrison, Yu "didn't like the letters, so she rewrote them."  *Id.* at PageID.300-301.  All of these assertions are either conclusory or based on subjective belief or intuition.  Thus, they fail to establish retaliation.

### D.   FMLA

Finally, Defendants argue that Harrison can't assert an FMLA retaliation claim because she has failed to "establish a waiver of sovereign immunity to bring a private cause of action."  ECF No. 18, PageID.131.  Harrison didn't address this argument in her Response.  *See generally* ECF No. 21.  She has therefore forfeited the argument and because the Court agrees with Defendants, it will grant summary judgment in their favor on this claim.

As an initial matter, Harrison didn't respond to Defendants' argument about the FMLA, *see* ECF No. 21, PageID.262-271, so she as forfeited any opposition to Defendants' argument on this issue, *see Adkins*, 105 F.4th at 854; *but see Alexander*

23

*v. Carter*, 733 F. App'x 256, 261 (6th Cir. 2018) (deeming a failure to respond to an argument at summary judgment as waiver rather than forfeiture).

Substantively, Harrison doesn't have a private cause of action under the FMLA, so her FMLA claim is subject to dismissal. "Title I of the FMLA applies to private sector employees" whereas "most employees of the federal government to whom the FMLA applies are governed by Title II of the FMLA." *Doucette v. Johnson*, No. 16-11809, 2017 WL 840406, at *2 (E.D. Mich. Mar. 3, 2017) (quotation marks, citations, and ellipses omitted). Title II "governs leave for federal service employees with more than twelve months of service"; Title I, on the other hand, "governs leave for private employees and federal employees not covered by Title II." *Id.* (quotation marks and citations omitted). To determine if an employee is covered by Title II, the Court considers whether the individual was appointed to the civil service by "a member of a uniformed service [or an individual who is an employee under Section 2105]" 5 U.S.C. § 2105(a)(1)(C)[and (D)], who has completed at least 12 months of service as an employee . . . ." *Id.* at *3 (alterations in original; ellipses added).

Though Title I and Title II employees under the FMLA have "equivalent rights to leave time," only Title I provides an express cause of action for an employee to address an employer's violation of the employee's FMLA rights. *Doucette*, 2017 WL 840406, at *3 (quotation marks and citations omitted). Title II contains no such

analogous provision. *Id.* Thus, several courts have "held that federal employees covered by Title II may not bring lawsuits based on FMLA violations." *Id.* (citations omitted). This is because Title II neither creates a private right of action nor waives federal sovereign immunity. *Id.* (citation omitted). So, Harrison's "suit must be dismissed if [s]he is covered by Title II rather than Title I." *Id.* (citation omitted).

Here, Harrison is covered by Title II rather than Title I, so the Court must grant summary judgment of her FMLA claim. As a medical support assistant with the VA since 2016, Harrison is covered by Title II. *See Smith v. McDonough*, 21-cv-195, 2023 WL 2587477, at *1, 3 (E.D.N.C. Mar. 21, 2023) (dismissing FMLA claim of Title II-covered medical support assistant with VA for lack of subject-matter jurisdiction); *Smith v. McDonough*, 21-cv-195, 2021 WL 5312301, at *1, 3 (E.D.N.C. Nov. 15, 2021) (same); *see also Kinlocke v. McDonough*, No. 22-cv-01490, 2023 WL 6614446, at *11 n.13 (N.D. Ga. Feb. 21, 2023) (same while also recognizing that Congress has not provided a private cause of action for Title II FMLA employees). Because Harrison is covered by Title II, she has no cause of action against Defendants under the FMLA. The Court therefore grants summary judgment in favor of Defendants on Harrison's FMLA claim.

## IV.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 18).  Plaintiff's Complaint (ECF No. 1) is **DISMISSED**.

*This is a final order that closes this case.*

**IT IS SO ORDERED**.

Dated: August 21, 2025                    s/Brandy R. McMillion
      Detroit, Michigan                    BRANDY R. MCMILLION
                                United States District Judge